## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1897.

---

*(Continued from Volume 70.)*

---

MARY MALONE, Defendant in Error, v. THE FIDELITY
& CASUALTY COMPANY OF NEW YORK,
Plaintiff in Error.

### Kansas City Court of Appeals, May 3, 1897.

1. **Pleading:** PETITION: SUFFICIENT AVERMENT: IMPLICATION: AIDER
BY VERDICT. If a material matter be not expressly averred, but be
necessarily implied from express averment, the defect is cured by a
verdict; and in this case the petition necessarily implies that the de-
fendant ceased to prosecute an accused party on condition that his
friends made certain notes. Distinction between a defective and
defectively stated cause of action considered.

2. **Contracts:** COMPOUNDING FELONY: ACTION: ILLEGAL CONSIDERA-
TION. An action can not be maintained on a contract to stifle a pub-
lic prosecution, and if the consideration is partly to secure a debt and
partly to stop a prosecution, the whole is illegal.

VOL. 71 app—1                                          (1)

Malone v. Fidelity & Casualty Co.

3. ———: ———: EVIDENCE: ILLEGAL CONSIDERATION. The evidence shows that defendant was anxious to indemnify itself for liability as surety for a default, and the plaintiff and her brother-in-law were equally anxious to secure the defaulter's indemnity, and, to accomplish these ends, the notes in question were given. *Held*, the consideration was illegal.

4. **Promissory Note**: NAME ON BACK: MAKER: INDORSER. The petition alleged that plaintiff "wrote her name on the back of the notes." The answer admitted she "did indorse the notes." *Held*,— the answer admitted the allegation of the petition, and the plaintiff was a maker unless the evidence showed she sustained some other relation to the paper.

5. **Contracts**: COMPOUNDING FELONY: ILLEGAL CONSIDERATION: SCIENTER. The evidence in this case shows that the plaintiff, the defendant, and the other party to the notes in question, were perfectly cognizant of the illegal consideration, and plaintiff being in *pari delicto* with the other parties is not entitled to relief at law or in equity, since the law will leave parties to such contracts exactly where they stand, and equity will not grant an injunction to recall notes given under such an agreement from circulation, even though they were not due at the institution of the suit.

*Error to the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

*Harkless, O'Grady & Crysler* for plaintiff in error.

(1) The objection to the introduction of testimony under the petition should have been sustained, because its only allegation is that defendant had agreed with Dennis' friends to drop the prosecution against him. Who these friends were does not appear. It is not alleged that either she or Hoyt, who also signed the note, were any of the friends to whom the promise was made or that the promise or agreement was with anybody who signed the note, but that she did not know of any such agreement at the time she signed it, hence, she could only have signed it to secure the debt. (2) There was no evidence of any promise, agreement, or under-

standing between defendant and Miss Malone, that any prosecution was to be stopped or abandoned. And the testimony shows that the securing of the debt was all that was undertaken or discussed; as a matter of course the debt grew out of the crime, but this did not prevent defendant from settling the debt. *Rock v. Matthews*, 14 S. E. Rep. 137; *McCoy v. Green*, 83 Mo. 632; *Breathwith v. Rogers*, 32 Ark. 758; *Catlin v. Henton*, 9 Wis. 496; *Malli v. Willett*, 57 Iowa, 710; *Compton v. Bank*, 96 Ill. 301; Whart. Crim. Law, 1559; *Cohoes v. Cropsey*, 55 N. Y. 685; *Von Windish v. Klaus*, 46 Conn. 433. Miss Malone admits that she knew nothing of any promise to compound the felony at the time she signed the note, hence, the debt being admitted, the law is that the court will presume that the payment of the debt was the sole consideration. *Cohoes v. Cropsey, supra*. (3) But whatever may be the evidence on the matters above stated, there is another matter which is absolutely fatal to plaintiff's recovery. It is this: The law is well settled that there must be a crime committed to compound. This may be shown in two ways: *First*, if a charge has been lodged, or, *second*, if no charge, the facts constituting the offense must be shown. The plaintiff elected in her petition to stand on the first theory, that is, that proceedings had been instituted, by alleging in her petition that a warrant had been issued for his arrest. On the trial plaintiff attempted to show this by parol testimony of Mr. Hoyt, but counsel for defendant objected on the ground that this was not the best evidence, and the court sustained the objection. She offered no other testimony on the subject. This certainly defeats this case. *Cheltenham v. Cook*, 44 Mo. 40; *Baker v. Farris*, 61 Mo. 389. (4) Miss Malone was a maker of the note. We ask your honor to see the following case: *Pohle v. Dickman*, 67 Mo. App. 381.

*Teasdale, Ingraham & Cowherd* for respondent.

(1) The notes given upon consideration, either express or implied, of stifling a criminal prosecution, were, as between Hoyt, the maker, and appellant, the payee, absolutely void. *Sumner v. Summers*, 54 Mo. 340; *Janis v. Roentgen*, 52 Mo. App. 117; *McCoy v. Green*, 83 Mo. 632. If the consideration was in part to secure the debt and in part to stop the prosecution, the whole consideration is illegal. *Friend v. Porter*, 50 Mo. App. 89; *Bick v. Seal*, 45 Mo. App. 477. (2) Appellant admitted by its answer, and made showing by its evidence, that Mary Malone was an indorser, or surety, and not a joint maker of these notes. (3) After this admission, she was relieved of the necessity of showing in what capacity she signed the notes. If not so relieved she could have shown by parol that she was a surety. *Mammon v. Hartman*, 51 Mo. 168. (4) The principal contract between Hoyt and appellant being illegal, there could be no legal contract of suretyship or guaranty based upon it. There is no more liability than there would be if her name were written across the back of a blank piece of paper. Randolph on Com. Paper, sec. 922; *Heman v. Francisco*, 12 Mo. App. 560; *Board of Education v. Thompson*, 33 Ohio St. 321; Brandt on Suretyship [2 Ed.], sec. 21; *Coffelt v. Wise*, 62 Ind. 456; *Owens v. Mynatt*, 1 Heisk, 675. Of this illegality Miss Malone had not been told. *Patterson v. Gibson*, 81 Ga. 802. (5) These notes being negotiable and not yet due, might drift into the hands of as many innocent purchasers as there were notes, and hence cause respondent the expense of a multiplicity of suits, as well as a possible deprivation of defense, which could be made against the original payee. Equity, therefore, on that ground, had jurisdiction. *Darst v. Brockway*, 11 Ohio, 471; *Von*

*Windish v. Klaus*, 46 Conn. 434; *Breathwith v. Rogers*, 32 Ark. 762. (6) And, although the notes were all due at the date of the trial, yet they were not due at the date of the bringing of the suit, and, therefore, equity properly took jurisdiction, and will retain it until a proper end is reached. *Harrington v. Utterback*, 57 Mo. 519; *Nelson v. Betts*, 21 Mo. App. 232; *Purdy v. Gault*, 19 Mo. App. 202. (7) The respondent came into equity with clean hands; she had no connection with the pernicious agreement made between Hoyt and appellant to thwart the operation of the criminal law; she was not derelict in any way, much less in *pari delicto*. It is this feature that gives her a standing in equity under all the cases. Equity will not make one who is not in the wrong become a party to such an iniquitous arrangement. To do so it would become a party to it itself. *Rock v. Mathews*, 35 W. Va. 532; *Compton v. Bank*, 96 Ill. 304. (8) But, even if she had been, in a measure, connected knowingly with the illegal transaction, she would not be without remedy. The *pari delicto* doctrine is not in this state as it is in Illinois and West Virginia, as shown by cases cited by appellant (96 Ill. and 14 S. E. Rep. cited by appellant). *Bell v. Campbell*, 123 Mo. 16. (9) The record shows that a warrant was issued. Appellant, after objecting to the proof of this by parol, drew it out himself by cross-examination.

SMITH, P. J.—This is a suit in equity.

The petition alleged that on the twenty-seventh day of February, 1893, E. W. Hoyt executed to defendant, a corporation, thirteen promissory notes to become due thereafter at certain stated dates; that plaintiff wrote her name on the back of said notes; PETITION. that there was no consideration passed, either from said Hoyt or from plaintiff, to defendant;

that she has since learned that the only consideration for giving said notes was that the defendant would cease the prosecution of one Dennis, for whom it had become surety to the Armour Packing Company, said Dennis having become a defaulter to said packing company. And plaintiff says that at the time said notes were given there was a warrant out for the arrest of said Dennis, and that defendant proposed to the friends of said Dennis to settle it and cease the prosecution if said notes could be given, and that said notes were afterward given solely for said consideration, to wit, the dismissal and stopping of the prosecution against said Dennis. But plaintiff says she was not aware of the nature of the transaction, and has learned the real truth of the matter since. That unless restrained defendant will assign said notes to an innocent purchaser and plaintiff will be without adequate remedy at law.

She, therefore, prays that the liability on account of said transaction be canceled and her indorsement on the back of said notes be held for naught. That defendant, its agents, servants, and employees, be restrained and enjoined from transferring or selling said notes, and that they be ordered to bring the same into this court to be disposed of as the court may order."

The answer was a general denial, with which was coupled the admission that the notes described in the petition were made by said Hoyt and indorsed by the plaintiff. There was a trial and decree for the plaintiff, and defendant brings the case here by writ of error.

The defendant objects that since the petition only alleged that defendant agreed with friends of Dennis to drop the prosecution against him without naming such friends, and since, too, it was not therein alleged that either plaintiff or Hoyt were the friends with whom

said agreement was made, and that the plaintiff did not know of said agreement at the time she indorsed the note, she could only have indorsed it to secure the debt, and therefore the trial court erred in its action in overruling the objection interposed by defendant at the inception of the trial, to the introduction of any evidence, for the reason that the petition failed to state facts sufficient to constitute a cause of action.

It is, we think, necessarily implied from the allegations of the petition, that the proposition of the defendant to cease the prosecution of Dennis on the conditions therein named was made to Hoyt and other friends of Dennis, and the plaintiff would be included in this implication were it not for the subsequent allegations of want of knowledge on her part of the transaction.

PLEADING: petition: sufficient averment: implication: aider by verdict.

The rule of practice is that if a matter material to plaintiff's cause of action be not expressly averred in the petition, but the same be necessarily implied from what is expressly averred, the defect is cured by verdict. In such case the defendant must make his objection either by demurrer or motion. A plea to the merits, however, waives such objection. *Murphy v. Ins. Co.* (decided at present term), and the authorities there cited.

There is a distinction under our practice act between a petition which defectively states a cause of action and one which states no cause of action at all. A defective cause of action is one thing and a defectively stated cause of action is another. A petition defectively stating a cause of action is good after verdict. When a petition fails to state a cause of action, owing to the omission of an essential averment, and its terms are not sufficiently general to comprehend such an averment by fair and reasonable intendment, an oral demurrer can be interposed to it at the trial by the ob-

jection to the admission of any evidence. Such a demurrer, however, does not entirely take the place of the formal demurrer to the pleading, and should not be sustained for informality in the statement of an essential fact. *Murphy v. Ins. Co., supra.*

Again, the statute, section 2113, Revised Statutes, provides that where a verdict shall have been rendered in any cause, the judgment thereon shall not be reversed for want of any allegation or averment on account of which a demurrer could have been maintained, or for omitting any allegation or averment without the proving which the triers of the issue ought not to have given the verdict. *Murphy v. Ins. Co., supra,* and cases there cited. And it has been ruled that where statements in pleadings are defective and uncertain, evidence given in support of such statements will cure such defects and uncertainties. *Edwards v. Railway,* 74 Mo. 117; *Owen v. Crum,* 20 Mo. App. 121. Accordingly, we must think the defendant's objection to the sufficiency of the petition ought not to be sustained.

The law is now well settled in this state that a contract to stifle a public prosecution can not be upheld. It is the agreement, either expressed or implied, to abstain from prosecution or to dismiss one already begun, which taints the whole transaction and avoids the contract. *Sumner v. Summers,* 54 Mo.

CONTRACTS: compounding felony: action: illegal consideration.

340; *McCoy v. Green,* 83 Mo. 632; *Baker v. Harris,* 61 Mo. 389; *Janis v. Roentgen,* 52 Mo. App. 117. And if the consideration was in part to secure the debt and part to stop the prosecution the whole consideration is illegal. *Friend v. Porter,* 50 Mo. App. 89; *Bick v. Seal,* 45 Mo. App. 477; *Goodwin v. Crowell,* 56 Ga. 566; *Taylor v. Jacques,* 105 Mass. 29; *Buck v. Bank,* 27 Mich. 293.

But the defendant contends that the testimony does not justify the finding of an illegal agreement.

EVIDENCE. It is true that it is not entirely harmonious and without conflict. But it sufficiently appears from that given by the plaintiff's witnesses that Dennis had been in the employment of the Armour Packing Company and while so employed he had embezzled funds of that company which had come into his hands in the course of his employment. It further appears that the defendant was his surety on his bond to said company. It also further appears that a state warrant had been issued on the complaint of some one for the apprehension of Dennis for his crime. Hoyt, a brother-in-law of Dennis, applied to Rush, who was the agent of the defendant, to know whether the default of Dennis could not be settled in some other way than by criminal prosecution. Rush stated to Hoyt that there was a warrant out for the arrest of Dennis and that there was a detective shadowing him, but that he would rather have the money than to prosecute the case. Hoyt thereupon procured $100 from the father of Dennis to be applied in settlement to the default. Rush assured Hoyt that if notes with good surety thereon were given for the balance of the default and the detective's bill the prosecution would be dropped and there would be nothing more of it. Accordingly Hoyt signed the notes and the plaintiff, at the request of the wife of Dennis, indorsed them. If we reject the testimony tending to prove the agreement as unworthy of credence, still we are unwilling to yield our assent to the contention that the record is entirely barren of any evidence of the agreement. If there was no such agreement, why was it when the money was paid and the notes delivered to defendant it recalled the detective who had been working up the case against the fugacious Dennis, or, why did it drop the prosecution already set on foot and not revive the same when shortly thereafter he returned

from his hiding to the accustomed haunts, or why was it that the wife of Dennis was so much interested in procuring the notes that she went to plaintiff and importuned her to indorse them?

These and other circumstances which might be instanced we think plainly imply that there was some promise or agreement by which if the money was paid and the notes were given that the prosecution was to be dropped and that such agreement was in part the moving consideration for the payment of the money and the giving of the notes. The true state of the case, as we understand it to be from the evidence, is this: that the defendant was anxious to indemnify itself against its liability to the packing company and the wife and brother-in-law of Dennis were equally anxious to purchase the immunity of Dennis against the impending prosecution for his embezzlement and to accomplish these ends the transaction was consummated.

—: —: evi-dence: illegal consideration.

The petition alleges that the plaintiff wrote her name on the back of the notes and the answer admits that plaintiff "did indorse the notes set out in the petition." This is the same as if the answer had read the defendant "admits that plaintiff *wrote her name on the back of the notes.*" Anderson's Law Dict. 538; Standard Dict. 918. The language of the answer just quoted is but an unequivocal admission of the allegation that the plaintiff wrote her name on the back of the notes. The law is settled in this state by a long line of adjudications that where one indorses a negotiable promissory *note*, or as is sometimes otherwise expressed, writes his name on the back thereof, not being a payee or indorser thereof, he is to be treated *prima facie* as a maker. *Seymour v.*

PROMISSORY note: name on back: maker: indorser.

*Farrell*, 51 Mo. 95; *Bank v. Payne*, 111 Mo. 291. This presumption of the law that plaintiff signed the notes as maker is always subject to be repelled by *parol* evidence to the contrary. *Seymour v. Farrell*, *supra*. There is nothing in the evidence tending to show that plaintiff signed the notes as guarantor or surety or in any other capacity than that of maker. Dennis did not sign the notes. Hoyt and plaintiff alone were the joint makers thereof.

It appears to be conceded that when the plaintiff indorsed the notes she was not apprised of the nefarious agreement that had been entered into between defendant and Hoyt. But we do not think this concession is warranted by the evidence. It is true no witness in terms testified that plaintiff knew at the time she indorsed the notes that the said illegal agreement was an element entering into the consideration for which they were given, yet they did testify to facts from which her knowledge may be reasonably inferred. The testimony discloses that plaintiff and Mrs. Dennis had been schoolmates; that the relation they sustained to each other was that of the warmest and most intimate friendship; that the former went to the latter and explained to her the trouble in which her husband was involved and begged her to indorse the notes in question, and that thereupon the plaintiff consented to do so. It may be very well inferred from this that Mrs. Dennis made known to plaintiff what the emergency was that required her indorsement of the notes. It appears, too, that the plaintiff met Hoyt in the office of Rush, where the transaction was discussed in connection with the execution of the notes. This latter fact lends additional support to the inference just stated.

The conclusion which we deduce from the entire evidence is that the agreement to drop the prosecution

CONTRACTS: compounding felony: illegal consideration: scienter.

was an element that entered into the consideration for which the notes were given, but for which plaintiff and Hoyt would not have given the notes, and that all the parties concerned were perfectly cognizant of the fact at the time of the making and acceptance of the notes. But the defendant contends that even though it was established by the evidence that the notes were indorsed by plaintiff upon an express or implied promise that Dennis would not be prosecuted for his embezzlement, yet the plaintiff was in no situation to invoke the interference of a court of equity. The law is as we have seen that a note given in consideration of the composition of a felony can not be enforced by the promisee against the promisor. The courts will not aid either party to an illegal contract to enforce it against the other. The maxim *in pari delicto, potior est conditio defendentis* means that the law leaves the parties exactly where they stand; not that it prefers the defendant to the plaintiff, but that it will not recognize a right of action founded on an illegal contract in favor of either party against the other. It was said by Chief Justice WILMOT in *Collins v. Blantern* (1767) 2 Wils. 350, that "you shall not stipulate for iniquity; all writers upon our law agree in this, no poluted hand shall touch the pure fountains of justice. Whoever is a party to an unlawful contract if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a court to fetch it back again; you shall not have a right of action when you come into a court of justice to recover back. *Oprocul, Oprocul, este profane.*"

In this respect the rule in equity is the same as at law. Equity follows the rule of the law and will not interfere for the benefit of one party against a *particeps criminis*. The suppression of illegal contracts is far

more likely in general to be accomplished by leaving the parties without a remedy against each other. 1 Story Eq., sec. 298.

If the plaintiff was occupying the position of defendant and if this was an action to recover the amount of the notes she could avail herself of the maxim above referred to by way of defense. But she does not occupy that position. She is, herself, invoking the aid of a court of equity to relieve her from a contract which she alleges to be illegal. She is the actor and apparently in a position in which the maxim can be invoked and relied upon by the defendant. If the notes are founded on an illegal consideration why should the court lend its process to aid one party to the illegality rather than the other. If there has been an agreement for the suppression of a criminal prosecution the plaintiff was a party to it as well as the defendant.

The plaintiff is not seeking to get back the money paid under the illegal agreement but to recall the notes which she has given under such agreement. This distinction makes no difference in the substantial equities of the case. *Atwood v. Fisk*, 101 Mass. 363; *Worcester v. Eaton*, 11 Mass. 375; *Swartzer v. Gillett*, 1 Chand. 207; *Harrington v. Bigelow*, 11 Paige (Ch.), 349. If the suppression of a criminal prosecution was one of the considerations for which the notes were given no reason is perceived why plaintiff may not avail herself of that fact by way of defense in any suit at law against her on them. The notes are past due and she is in no danger of losing the benefit of that defense in consequence of any transfer of them to a third person.

It follows from these considerations that the decree of the circuit court will be reversed. All concur.