JAKE LUTTRELL v. THE STATE.

No. 9027.     Delivered June 3, 1925.

1.—Gaming—Private Residence, Occupied by a Family—What Is.

In 1901, the gaming laws of this State were amended so as to exempt from punishment, when the offense was playing at a game with cards, only those who played at a private residence occupied by a family. In the instant case we do not believe that the place in which the complaint alleged the playing to have been done, was shown to be a private residence within this statute. See opinion for discussion and citation of many cases.

2.—Same—Charge of Court—Erroneous.

The charge of the court in submitting the defensive issue as it is worded requires the jury to believe beyond a reasonable doubt that the place where appellant played cards was a private residence occupied by a family, before acquitting him, and for this error the cause is reversed.

Appeal from the County Court of Fisher County. Tried below before the Hon. J. S. Connell, Judge.

Appeal from a conviction of playing at a game with cards; penalty, a fine of ten dollars.

The opinion states the case.

*Ponder & Ferrell*, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—From conviction in the county court of Fisher County for playing cards at a house other than a private residence. Punishment assessed at a fine of ten dollars, appellant brings this appeal.

The sufficiency of the evidence is attacked on the ground that same fails to show the house where the alleged gaming took place to be other than a private residence occupied by a family. Under the gaming statutes of this State as they stood from 1895 to 1901, playing a game with cards was penal only when same occurred at some public place. See Art. 379, Penal Statutes 1895. Private business offices and private residences were expressly said not to be such public places. See Art. 380, id. Such was the law when the case of Stewart v. State, 34 Texas Crim. Rep. 33 was decided. The statute forbidding betting at games of dice, etc., also referred only to private residence. Such was the game discussed in Williams v. State, 87 S. W. Rep. 1156. In these cases it was decided that a house where one individual lived might be. a private residence. In 1901 the law was amended so as to exempt from punishment, when the offense was playing at a game of cards, only those who played at a private residence "occupied by a family". The change in this law is discussed in Fondren v. State, 179 S. W. Rep. 1170. Decisions under it will be found in Hipp v. State, 45 Texas Crim. Rep. 200; Patterson v. State, 58 Texas Crim. Rep. 393; Robbins v. State, 57 Texas Crim. Rep. 8. The Hooper case, 105 S. W. Rep. 816, which is cited, was a conviction for betting at dice under the statute which does not refer to the proposition of the private residence being "occupied by a family" and hence is not in point. The Hipp case, supra, decides that a tent occupied and used as a home by parent and child, may be a private residence occupied by a

family. The Patterson case, supra, holds that a private residence occupied only by a bachelor is not a private residence occupied by a family. To the same effect is Robbins v. State, supra. In McCollum v. State, 49 Texas Crim. Rep. 383, we held that a house which had been occupied by a family, but from which the father and mother and part of the children had moved, leaving behind two minor sons, was not a private residence occupied by a family. In Davis v. State, 151 S. W. Rep. 314, we held that a residence from which the family had gone on a visit for some weeks, leaving behind them appellant as the only occupant of the house, he indulging in gaming while they were gone, was not a private residence occupied by a family. In Stallings v. State, 170 S. W. Rep. 159, is stated the proposition that the decisive point is not solely whether the house is a private residence, but also the additional proposition that it is being occupied by a family at the time the alleged gaming takes place. To the same effect is Sloan v. State, 170 S. W. Rep. 158. In Garcia v. State, 179 S. W. Rep. 1172, a box car in which a group of men ate, slept, etc., one of whom stated that he had a wife who was in Mexico, was held not a private residence occupied by a family, under the statute. Applying the reasoning of the decisions above to the facts in the instant case, we think the house at which the gaming took place clearly within the forbiddance of the statute. A woman testified that she was the occupant of the house; that she was married but was separated from her husband. It is beyond dispute that he was not occupying the house with her at the time of the gaming and that she was the only claimed constituent of a family occupying the premises at said time. This did not suffice to so exempt the premises as that the parties might play at cards without punishment.

The court's charge is manifestly wrong. After submitting definitions and the affirmative application of the law to the facts, in attempting to present the law of the defensive theory, the court instructed the jury as follows:

"Now if you believe from the evidence, beyond a reasonable doubt, that the defendant Jake Luttrell did play at a game of cards as alleged in the complaint at a private residence, and that said residence was occupied by a family, you will acquit the defendant."

This was excepted to as being directly the opposite of what the court should have charged. We presume the learned trial judge intended to tell the jury that even though they believed beyond a reasonable doubt that appellant did play a game of cards as alleged in the complaint, yet if they had a reasonable doubt as to whether said place was a private residence occupied by a family, they should acquit. To require the jury to believe the defensive theories beyond a reasonable doubt, is not the law.

There appears much doubt as to the sufficiency of the facts, though they may be strengthened upon another trial. Three parties, one or all of whom were deputy sheriffs, went on the night in question to the house where the alleged gaming took place. One of them testified that though a small crack in a plank under the window on the south side of the room he looked in and observed appellant and three other parties sitting around a table with cards in their hands. He, in common with the other witnesses, testified that said table was against the wall under the window on the south side of said room. If this be true and the crack was under the same window and right at the table, it appears difficult to understand how the witness could see what was in the hands of the parties at the table, unless the surface of the table was lower than the window sill. This might be possible. This same witness testified that when the door was opened appellant appeared with cards in his hand. Another one of said raiding party, also introduced as a witness by the State, denied seeing appellant with any cards in his hand when the door was opened; denied seeing any game being played, and said that he saw no one through any crack. Appellant introduced a number of parties who were in the house at the time who testified that a negro was trying to show a man named Overby how to play a game called "Coon-Can" and that appellant at no time had the cards in his hand. The State's own testimony being in such contradictory condition, and the State having failed to introduce or account for the absence of the third member of its raiding party, and the testimony for the defense so completely according in its denial of appellant's participation in any game leads us to call attention to this weakness of the case on its facts.

For the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded*